# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-2359

———————————————

Tessier's, Inc.

*Petitioner*

v.

Secretary of Labor

*Respondent*

—————————

Petition for Review of an Order of the
Occupational Safety & Health Review Commission

—————————

Submitted: May 13, 2021
Filed: July 22, 2021

—————————

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.

—————————

WOLLMAN, Circuit Judge.

Tessier's, Inc. employee Cameron Puepke was modifying a hole cover on the roof of an unfinished building when the cover collapsed, causing Puepke to fall twenty-two feet to the floor below. The Occupational Safety and Health Administration (OSHA) issued a citation against Tessier's under 29 C.F.R. § 1926.501(b)(4)(i), for failing to protect its employees from falling through holes.

An Occupational Safety and Health Review Commission administrative law judge (ALJ) affirmed the citation, which the Commission declined to review. Tessier's filed a petition for review of the resulting final order, arguing, among other things, that the ALJ erred in finding that Tessier's employees removed a one-foot-by-three-foot section of the cover before it collapsed. We deny the petition.

Layton Construction and Gustafson Construction Corporation (Layton-Gustafson) together served as the general contractor for the construction of an orthopedic and sports medicine facility in Rapid City, South Dakota. A Layton-Gustafson subcontractor hired Tessier's to install the dry-side mechanical systems, *i.e.*, air handling units, roof curbs, and ductwork for the HVAC systems.

Three air handling units were to be installed in Area C of the roof, in which five holes had been created to accommodate the units. The holes were framed by L-shaped bent steel plates, which were attached to the building's I-beams. Layton-Gustafson carpenter Paul Garcia measured the holes, assembled two-by-four wood frames in the shape of a box, and then screwed pieces of plyform (a type of sturdy plywood) or plywood on top of each box to complete the covers, which were thereafter placed over the holes. The two-by-four frames rested outside the bent steel plates and were affixed to the structure with deck screws.

Garcia was instructed to rebuild the covers so that they would not interfere with the pouring of the roof's concrete floor. He disassembled the covers, rebuilt the frames so that they would fit tightly inside the steel plates, and reattached the plywood. The plywood of the rebuilt covers served as the load-bearing surfaces, with one-half inch to one inch of plywood extending over the plates framing the holes. The frames themselves were not affixed to the structure. The word "hole" was emblazoned on each cover in florescent spray paint.

Tessier's began installing roof curbs—pieces of galvanized tin—in Area C on March 8, 2018. The curbs were designed to fit around the holes where the air handling units would be installed. While placing the curbs, the Tessier's crew discovered that the covers' excess plywood overhang prevented the curbs from sitting flush against the bent steel plates.

To remedy the plywood-overhang problem, Puepke and fellow Tessier's employee Jason Fenner decided to trim the covers' edges while the covers were still in place. They believed that the covers' frames were affixed to the building's structural steel, but did little to investigate and thus did not discover that the plywood alone constituted the load-bearing surface of each cover. After relaying the cover-modification plan to the foreman, Fenner used a reciprocating saw to cut a small strip from a short end of the first cover, which stayed in place.

The hole for Air Handling Unit Number 4 was three feet wide and eight feet long. Puepke and Fenner removed a one-inch strip from a short end of the cover to install the curb. The Secretary maintains that they also removed a one-foot-by-three-foot section of the cover, which Tessier's disputes. Fenner and Puepke thereafter used a screw gun to begin removing screws from a one-and-one-half inch wide strip of plywood on a long side of the cover.

Puepke rested his hand on the middle of the cover. When he leaned onto it, the cover collapsed like "a hinge" or "a tripod with only two legs," causing Puepke to fall to the floor below. He suffered serious injuries, including skull fractures, broken bones, and a fractured pelvis. Fenner was pulled to safety by coworkers and was not injured.

The workers who witnessed the fall completed incident reports and made a diagram of the incident. Their reports did not indicate whether the one-foot-by-three-foot section of plywood had been removed. A Layton-Gustafson supervisor reported

that "[p]art of the cover was removed and while attempting to remove more plywood, the hole protection gave out." A Layton-Gustafson project manager made a computer-generated version of the diagram, which suggested that a one-foot-by-three-foot section had been removed.

OSHA Compliance Safety and Health Officer Anthony Castillo inspected the worksite during his investigation of Puepke's fall. Most of the collapsed cover was located on the second floor, where it had landed after falling through the hole. A one-foot-by-three-foot section of the cover remained on the roof, however. It was found on the roof itself, outside the curb and next to the one-inch strip of trim that Puepke and Fenner had removed. The frame beneath that section revealed a "volcano effect" on some screw holes, indicating that the screws may have been forcibly ripped out of the frame and not removed by a screw gun.

As earlier stated, Tessier's was cited for failing to protect its employees from falling through holes. Following a three-day trial, the ALJ found that Tessier's had committed the violation. The ALJ's decision became the Commission's final order in light of its declination of review. See 29 U.S.C. § 661(j).

On petition for review, we uphold the Commission's factual findings that are "supported by substantial evidence on the record considered as a whole." Omaha Paper Stock Co. v. Sec'y of Lab., 304 F.3d 779, 782 (8th Cir. 2002) (quoting 29 U.S.C. § 660(a)). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion." Id. We uphold "the Commission's legal conclusions unless they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Id. (quoting 5 U.S.C. § 706(2)(A)).

Tessier's contends that the citation was not validly issued. To establish that the citation was validly issued, the Secretary was required to prove by a preponderance

of the evidence that, among other things, the cited standard applied to the condition. Astra Pharm. Prods., Inc., 9 BNA OSHC 2126, 2129 (No. 78-6247, 1981); see 29 U.S.C. § 654(a)(2) (requiring employers to "comply with occupational safety and health standards promulgated under this chapter"). The standard here provides:

> Each employee on walking/working surfaces shall be protected from falling through holes (including skylights) more than 6 feet (1.8 m) above lower levels, by personal fall arrest systems, covers, or guardrail systems erected around such holes.

29 C.F.R. § 1926.501(b)(4)(i). "Hole" is defined as "a gap or void 2 inches (5.1 cm) or more in its least dimension, in a floor, roof, or other walking/working surface." Id. § 1926.500(b).

Tessier's argues that the standard does not apply. It maintains that there was no gap or void of two inches or more because the hole was covered and thus there was no hole. Tessier's further contends that substantial evidence does not support the ALJ's finding that Fenner and Puepke removed a one-foot-by-three-foot section of the cover and thereby exposed a hole. Tessier's concedes that the standard applies if substantial evidence supports the disputed finding.

We conclude that the Secretary presented sufficient evidence to allow a reasonable person to find that Puepke and Fenner removed the section of the cover. See Omaha Paper Stock Co., 304 F.3d at 782. Puepke testified at his deposition that he and Fenner removed a one-foot-by-three-foot section. When OSHA's Castillo inspected the worksite, a section of that size was found on the roof, next to the one-inch strip that had been removed from the three-foot end of the cover. The Layton-Gustafson employee responsible for preserving the site denied Tessier's allegation that the section had collapsed during the fall and that anyone could have returned it to the roof from the second floor. Fenner testified that he could not remember

whether the one-foot-by-three-foot section had been removed, noting that he "may have" removed it.

The evidence that Tessier's cites does not compel a conclusion contrary to the ALJ's. Puepke contradicted his own deposition testimony at trial, testifying instead that the section had not been removed. Fenner testified that they had not reached the long edge of the one-foot-by-three-foot section before the collapse, but he equivocated when asked whether they had removed the one-foot-by-three-foot section. The volcano effect in the frame beneath the section does not necessarily establish that the section had not been removed before the collapse, particularly in light of the evidence that Fenner had told OSHA that he and Puepke had used a screw driver to pry off a portion of the cover.

We conclude that substantial evidence supports the ALJ's conclusion that Puepke and Fenner had removed a one-foot-by-three-foot section of the cover before it collapsed and, in doing so, exposed a hole. See 29 C.F.R. § 1926.500(b) (defining "hole").[1] Because this hole was not covered and was more than six feet above the second floor, Tessier's was required to protect its employees from falling by means of an alternative form of fall protection, which it had not done. See id. § 1926.501(b)(4)(i) (requiring "personal fall arrest systems, covers, or guardrail systems"). The ALJ did not err in concluding that Tessier's had committed the violation.

---

[1]Having concluded that substantial evidence supports the conclusion that Tessier's employees themselves exposed a hole, we reject Tessier's argument that the Secretary failed to establish that Tessier's knew or could have known of the violative condition, *i.e.*, the lack of employee fall protection when work surface had a hole more than six feet above the lower level. See Astra Pharm. Prods., Inc., 9 BNA OSHC at 2129 (requiring the Secretary to prove by a preponderance of the evidence that the employer "knew or could have known of the [violative] condition with the exercise of reasonable diligence").

The petition for review is denied.

_____